May it please the Court, I'm Dina Mishra, appointed counsel for Petitioner. If I may, I'll reserve five minutes for rebuttal. Because the briefs are sealed, but the argument is not, I request that counsel and the Court use only my client's court-approved pseudonym, Mr. Gomez, for short. Mr. Gomez, a lawful permanent resident since 1993, escaped here as a child 35 years ago from a Mexican cartel's torture camp. He supports his two U.S. citizen sons and other relatives. He is hardworking and law-abiding save for one considerable but isolated mistake for which he served his sentence and sought to make amends. What do you do with Medina Villa, which seems to be on point and binding to this panel? Your Honor, Medina Villa concerned the interpretation of the guidelines. It is not binding with respect to the INA. The Estrada Espinoza en banc decision directly interpreted sexual abuse of a minor under the INA. That is what is binding. Specifically, Medina Villa showed why the guidelines are distinct from the INA. It pointed out that, as the earlier case this morning also pointed out, there are separate categories, a statutory rape category and a sexual abuse of a minor category under the guidelines. There are no such two separate categories under the INA. There is only the sexual abuse of a minor category that Estrada Espinoza interpreted. So Medina Villa is not binding on this Court with respect to the INA. What about Palaio Garcia? Palaio Garcia, so after Estrada Espinoza, any cases that dealt with the INA such as Palaio Garcia, not one of those has found that something was, in fact, sexual abuse of a minor within the meaning of the INA by application of a definition other than the Estrada Espinoza definition. But the importance of Medina Villa seems to me to be that the Baron Medina definition under which the California crime would be sexual abuse of a minor remained good law, that is, that there are more than one way to understand sexual abuse of a minor. Your Honor, Baron Medina is clearly irreconcilable with Estrada Espinoza. That's because Baron Medina directly rejected the very principle Estrada Espinoza said. Sotomayor, except that counsel, your position seems to me, and I know that you've already been asked this, to be directly contrary to Palaio Garcia, which says that they're not in contradiction to each other, expressly considered the issue that you're raising, and said, no, there are two ways to skim this can, that it's not superseded, it's not intention, they're just alternatives, and that seems to me to answer your question. Your Honor, if I may, I'd like to explain why Palaio Garcia doesn't answer the argument in this case completely. Palaio Garcia, to the extent that it employs an alternative definition, cannot be and is not expressly inconsistent with the notion that there is at bottom a requirement of a sexual act that requires the involvement of sexual or intimate body parts. That's because Estrada Espinoza makes clear at bottom that there must be reference to a federal criminal statutory analog. So even if there could be two separate definitions, there still should be reference to the federal criminal statutory analog for the category to which that definition is being applied. And so, for example, under the federal criminal code, there's 18 U.S.C. 2241C and 2244A5. Both of those deal with minors under the age of 12. Both of those require at bottom an element of an act involving sexual or intimate body parts. So what we would say is that to be consistent with Estrada Espinoza, which also said that there must be, it is at bottom sexual activity with a minor who is abusive and there must be. What is, what is, I don't understand how that helps you, because it looks to me like the State crime here must involve sexual activity. That's not so, Your Honor, not within the meaning of the federal criminal statutory analog. So under State law, it's been clearly interpreted that there need not be any confinement of the act to sexual or intimate body parts. And that's the definition that's cross-referenced in all of the federal criminal analogs which Estrada Espinoza requires resort to. So under Martinez, in the State court, it specifically says that even though there involves those body parts. At bottom, therefore, it fails under the element. So your position is that, well, I really have a hard time understanding that. So if a defendant requires a child to masturbate him using a hand, a hand is not normally considered a sexual body part. We shake hands with people all the time. You're saying that doesn't count under the federal generic definition of sexual abuse of a minor? No, Your Honor, because what I'm saying is that the act that you describe still involves an act involving sexual or intimate body parts, because the act you described, even if it also involves an act. So you're saying it has to be somebody's sexual body parts? Correct, Your Honor. And you think that somebody can be convicted under this statute for giving a hug on the way to school? Yes, and that's specifically been argued by prosecutors and specifically been the basis for convictions under the California courts' law. So if you look to our brief, we have an entire section outlining a number of cases that show the act itself need not be restricted in that way. Martinez makes that very clear. Okay. I'm forgetting the name of the – I don't know why I'm forgetting the name of the Supreme Court case that says we don't look to the weird outlier, we look to the norm. What is ordinarily the kind of activity that is convicted under this State case? We don't look for the hypothetical or the, you know, 1 percent of cases. We're looking at the mine run of cases. I don't remember the name of that one. Your Honor, if I may, I believe that you're thinking of a number of cases, but the most recent cases, which include Moncrief and Decomp, make clear two things. One, that it has to be an analysis of the elements of the State crime and the elements of the Federal generic offense, and there has to be a match. Where there's no match under the categorical approach, you can't find this to be the INA category. But two, even if it were a question of do we actually realistically see this, and I believe that Moncrief talks about a realistic probability, the section in our brief makes clear that this is not an isolated occurrence. The prosecutors argue this all the time, that it is the basis, and that Martinez, as the California Supreme Court decision confirmed, this is the only understanding of the California law, and it actually must govern for purposes of what this Court has to understand that California does. If I may, Your Honor, I'll turn to the particularly serious crime analysis, which we believe the BIA erred in as well. No one seeks to minimize or excuse this crime, but it doesn't meet the strict immigration law standard for particularly serious. The consequences of a PSC finding are so severe, blocking relief even when future persecution is certain, that its standards are quite strict. Do we have jurisdiction to decide that question? Yes, Your Honor. There are two separate PSC arguments we make. As to the first, jurisdiction is undisputed. That's the question of applying an incorrect legal standard or failing to explain the decision. This Court has already exercised jurisdiction, even for aggravated felons, over those as questions of law. Alphonsus, I believe, Blandino, Medina, and Ebrey. If we disagree with you that they applied an incorrect legal standard, then what? Our second PSC argument is the argument that this does not fall within the statutory meaning of what is a PSC. Under that, we would submit that it is also a question of law over which there is jurisdiction. It is a question of law because it is a question of whether something fits the meaning of the statute or falls within the range that the statute allows for. This Court made clear in Delgado on Bonk that statutory interpretation questions are questions of law. This is an application of that law to facts. That's a mixed question that, even in Pachenkov, this Court recognized is a question of law. Your Honor, I believe the government has argued only that this could somehow be a discretionary decision and, therefore, somehow not a question of law. I would submit that there are two problems with that analysis. The first is that it is not statutorily discretionary, as Kusana and this Court's decision in Delgado decides is the clear statement necessary for it to be jurisdiction stripping in light of the anti-jurisdiction stripping canon. The second is that even if it were discretionary, it is not necessarily not a question of law. And that's because, as we know, the discretionary decisions bar has a questions of law carve-out, and we know that even under an abuse of discretion review, we ask if it's contrary to law. So ultimately, we say this is a question of statutory meaning, whether it fits in it. That's something over which this Court has jurisdiction. And as to that, the merits of that question, we would submit that because the BIA failed to explain the finding at all and said only that the IJ correctly concluded that this was a PSE, at a minimum, there needs to be a remand for failure to explain. Well, that's a very common thing that the BIA does. And if an immigration judge gives, and it's not this case, but let's say the immigration judge gives a 20-page scholarly exegesis on the Frantescu factors and goes through everything, and the BIA says, good job, we agree, what's wrong with that? The BIA may expressly adopt the IJ's decision. It didn't here, so you just look to the BIA's decision. But even if you were to look to the IJ's decision, the IJ here applied an incorrect legal standard. Most charitably read, his opinion considered the elements of the crime, the age of the minor's mother. The IJ overlooked the single most important factor on dangerousness to the community, the conduct that was the crime here. Focusing on the crime's elements, the IJ ignored that this offense did not involve force or the minor engaging in sexual conduct. This Court requires remand in similar cases like Afridi, where the agency generalized from the crime's type from its elements and noted a few other facts, but didn't note, for example, whether it involved force. Thus, we would say that this is not a PSC, so there must be remand for withholding relief to be considered, but at a minimum, there should be remand to correct the failures to explain and to apply the correct legal standard. If I may, I'll turn quickly to the Convention Against Torture so that I could reserve some time for rebuttal. Here, Mr. Kerry. Sotomayor Before you go there, if I could, what did it involve? You told us what it hasn't involved. The record and the briefs don't tell me much about what it did involve. The only thing in the record specifically says that there were photos and a camera, and we know that it met the elements of Section 288, and that he denied that it involved any force, and that he denied that there was any engagement of the minor in sexual conduct. So what we know only is just the elements of the offense, plus that aspect of there being photos. That's not specific enough about what the conduct was to actually rise to the level that this Court has required in a freedian otherwise, specifically in not inquiring into whether it involved force, for example. But on the Convention Against Torture, we would point out that Mr. Gomez has all his roots and found protection from his torturers here, yet the BIA denied him crucial cat relief, violating its own regulations in the process. Most crucially, the BIA failed to even acknowledge the country report, let alone look to its corroborative evidence of the extensive past torture Mr. Gomez experienced. The fact that that past torture comprised the type of kidnapping, extortion, torture scheme that Mexican cartels are largely involved with, that they have connections to other cartels, that they have connections to police, and so at a minimum we would say that this Court should consider remanding in light of recent cases such as Madrigal, which recognized not only the importance of the country report, but also the importance of the fact that there are problems with these cartels, that they are likely to take retribution against individuals. Are you asking for a remand for further consideration of a cat claim, or are you asking for deferral of removal as a matter of law? We ask for deferral of removal, but we believe that at a minimum there must be a remand here. If I may, I'd like to reserve the remaining time for rebuttal. You may. Thank you. May it please the Court. Dan Sheehan on behalf of the United States Government. This case is about whether the Petitioner's 2008 conviction under 288A is categorically sexual abuse of a minor, rendering him removable, and also whether he is eligible for any forms of abuse. Could you speak into the microphone a little more slowly? I'm sorry. I'm having trouble following you. I'm sorry. This case is about whether the Petitioner's 288A conviction is categorically a sexual abuse of a minor offense, rendering him removable, and whether he has any forms of relief available to him because of his conviction. And Barron-Medina basically says yes, and it is categorically, and the subsequent cases have not overruled Barron-Medina. That's your position. Yes, Your Honor. In a nutshell. In fact, all the cases that have come since Barron-Medina was issued cite Barron-Medina with approval, including Estrada Espinoza. Very briefly, I just want to briefly touch on a few reasons why Estrada Espinoza was not meant to include all sexual abuse of a minor cases. I think if you ask any judge on that panel, did they mean to have an exhaustive definition for all sexual abuse of a minor case when they decided Estrada Espinoza, no one would say that that's what they intended because, very simply, the statute issue was a statutory rape statute. And as this Court noted in Medina-Villa, one of the elements for sexual abuse of a minor under Estrada Espinoza is that the victim must be between the ages of 12 and 15. That means any child under the age of 12, so an 11-year-old, a 10-year-old, a 9-year-old, if they were sexually abused by an adult, would not be covered. There's no way that panel could have possibly intended that illogical result. Medina-Villa actually addresses all the other sexual abuse of a minor crimes. And actually, to the extent that it deals with sentencing guidelines, the Court actually said in Medina-Villa that we reaffirmed that decisional law defining terms, the term sexual abuse of a minor in the sentencing context is informed by the definition of the same term in the immigration context and vice versa. They've always been used interchangeably. So to say that Medina-Villa doesn't apply in this case because it dealt with is simply not true, based on the very reasoning the Court employed in Medina-Villa. Can you address the Catt claim? Because the IJ and the BIA's findings trouble me in this case. There's very little dispute that there's evidence of past persecution. Can you address the IJ's discussion of the country reports? Yes, Your Honor. Well, let me briefly give the Court some background on relief for under the Convention Against Torture. To be eligible for relief under the Convention Against Torture, the petitioner has to show that the government will either torture him or will acquiesce in the torture of him. And there's also no presumption of future harm. Unlike in asylum cases, there's no presumption of future harm that arises from past harm. In this case, the central factual basis for which he claims that the Court will torture him. Well, just a minute. We have at least one case which says that if an individual has been tortured and I'm going to leave out some words, it is likely that he will be tortured again if returned to the site of his prior suffering unless circumstances or conditions have changed significantly, not just in general but with respect to the particular individual. That's new rule. So that's binding on us. So it is important to determine whether this person suffered torture in the past. And it appears to me that what happened to him does rise to that level. And he was deemed credible. Correct, Your Honor. So I want you to take, at least for the purpose of my questions, as a given that he did suffer torture in the past, why is the decision, in your view, nonetheless supported by substantial evidence? Because he still has to bear the burden of showing that there's a likelihood of torture if he's returned to Mexico. And he said that he would be likely to be tortured and killed as payback, and he was credible. They don't forget the people who betray them. That's how they operate. Right. So a credibility finding simply says that the facts that have happened to him are established. But as to his estimation of what will happen to him in the future, that he can't give no evidence. Is there any contrary evidence that it's not how cartels operate, that they don't actually pay people back, that they don't torture people, that they don't kill people? It seems to me that the State Department kind of agrees with that assessment of his. Right, Your Honor. I think in this case, however, there's ample circumstantial evidence to support the agency's conclusion that for the Petitioner, that claim is speculative. The Petitioner left Mexico in 1979. He knows nothing about the whereabouts of this man named Santiago. This man named Santiago hasn't tried to reach him in over 20, well, probably more than that, but at least 20 years. The claims that he claims that had happened to him here, you know, he says he was shot at, but he doesn't think it was actually shooting at him, or there were two men waiting outside his house, I think, in 1996 or 1992. There just hasn't been. If Santiago was significantly interested in him. In 1996, there were people still interested in him. People, two men wanted to look through a storage closet. But he's been here for a very long time. And there are facts here that simply aren't. He has been here for a very long time, but is there any indication that if he were to return and the cartel members found out his identity, that they would lose interest in him because of that passage of time? Part of his claim for cat relief has to do with the fact that because he was tortured in the past, and given the way the cartels work, there's continuing interest in him. And to me, the fact that his relatives have had to go into hiding, and as far as the record shows, is still in hiding, seemed to corroborate that claim. So what in the country reports or other evidence that was presented showed that his claim is no longer viable in light of the passage of time? We are honest. The agency didn't specifically address the country reports in this case. So... Well, isn't that a problem in and of itself? Well, I think... Because they do seem to corroborate his concerns about continuing not only that cartels torture people, that they don't forgive or forget somebody who's witnessed their activities. Right. But, Your Honor, I think the agency concluded, reasonably so, that he never gets past the first step of showing his own... So it's not anybody who gets reported back to Mexico, faces torture. It's individual, specific, factual... Yes, it is. And here's somebody who was tortured in the past and who witnessed cartel crimes. He helped somebody to escape from the cartel, and he says, I'm the kind of person they're looking for specifically, and he was found credible. So it's not a generic claim. Right. Gosh, things are bad in Mexico. Right. No, I'm just trying to... As everyone agrees, they have a long memory. That's their methodology. They don't forget. Right, Your Honor. So between his history, the country conditions, and the very nature of these organizations, there's nothing to contradict it. There's nothing to contradict his well-founded fear. Well, Your Honor, I think in this case, the Petitioner bears the burden of proof, and the agency reasonably concluded that he didn't make his own factual circumstance in this case. I think the standard of proof, the standard of review in this case isn't, it's whether any reasonable person can reach this conclusion, and I think there is enough here to sustain the agency's factual finding that he doesn't get past the first step, because he's been here, and there's been no... He doesn't even know Santiago is still alive. There's no evidence that Santiago is alive, that he's looking for him. And so given these... And Mexico is... He hasn't been in Mexico for a very long time, and I think that's the factual basis supporting the agency's decision. And I would argue that the, that a reasonable fact finder could reach that conclusion. If we were to disagree with you, and I'm not saying we necessarily will, just for the purpose of this question, though, I want you to assume that we were to conclude that there is not substantial evidence on the cap claim. We have two options in that event. One is to return the case to the BIA for further consideration, and the other, as we did in Nuru, is to simply grant the deferral of removal. Which should we choose if we reach that point, and why? We think if the court were to reach that point, it should remand back to the agency to make that determination in the first instance. And why is that, if the facts are fully developed? We don't... Because the... Given the two-step analysis, the first step being, does he have a factual predicate, and then the second being the country conditions in Mexico. The latter, the agency deemed unnecessary to develop because the first was not met. So if the court finds that the second is also necessary to support the first predicate, then the proper course would be for the agency to consider the second issue in the first instance. The agency never weighed in on the country conditions report because it found it unnecessary, given that he failed to meet the first factual predicate necessary to show relief for Kat. Your Honor, briefly, I just want to touch on two of the other issues in this case, both the particularly serious crime analysis, and just one more quick note on whether or not this conviction is categorically sexual abuse of a minor. The question of whether or not 288A is overbroad was decided in Barron-Medina. Barron-Medina actually did look at claims that, while it could include relatively innocuous touching and other acts that seem to not constitute sexual abuse of a minor. Let me briefly just go over 288A with the court. It says, any person who willfully and lewdly commits any lewd or lascivious act, and now the element is under the age of 14, so a child 13 years old or under, with the intent of arousing, appealing to, or gratifying the lust, passion, or sexual desires of that person. The court noted that while some innocuous touching could be included, it wouldn't satisfy 288A unless it was done with lewd, lascivious intent for the purpose of gratifying sexual desires against a child under the age from 13 and under. Because of that, it's necessarily abuse because the children are so young, and it's not innocuous touching itself. It's innocuous touching plus these other things that make it lewd, lascivious, and sexual. So the fact that it's overbroad has already been considered and rejected by Barron-Medina. Briefly on the particularly serious crime issue, the patient doesn't raise the issue to the board. The board found that he didn't raise the issue to the board. Just arguing that his crime wasn't violent isn't enough to raise the issue before the board. So for that reason, he failed to exhaust his administrative remedies, and the court can't consider that in the first instance. But even if he did, even if the court finds that simply arguing his crime wasn't violent is enough, we would note that the I.J. conducted a proper case-by-case analysis, finding that the case was a particularly serious crime. One quick note, the I.J. did, if you look at the record, the I.J. did actually ask the petitioner what were the underlying facts of his conviction. I believe it's on page... It starts on page 187 of the record. And the petitioner was very evasive in answering that question. He said it involved some pictures. You can't get convicted under 288A of just having some pictures. So it was something more. If you look at the judgment of abstracts, it was possession of child pornography and 288A. So that's all the facts that the court had to go on. But the court did conduct a proper case-by-case, fact-by-fact analysis by looking at things that go beyond merely being convicted for 288A, specifically that the crime was sexual, that it had a three-year sentence, and that he was both in a stepfather role and that the child was only three years old at the time. And given the fact that he didn't really talk or provide any evidence on what actually happened, and the only evidence he provided wouldn't be enough to convict you for 288A, he can't argue now that the I.J. committed legal error by not addressing the particularly serious crime issue. So if Your Honor has no further questions... I don't believe we do. Thank you. Ms. Mishra, you have a couple of minutes remaining. And I want to ask one more question about the cat claim, if I may. Sure. Our sort of default position when we conclude that the BIA has made a finding unsupported by substantial evidence is that we remand for reconsideration. That's what ordinarily we do. So if they say, for example, Petitioner wasn't credible, so we don't need to decide all these other issues, and we say, yeah, the person was credible, we normally send it back for them to complete what they didn't do. Why shouldn't that be our default here? In this case, Your Honor, there's nothing left to complete. Where the BIA made its error, where there was no substantial evidence, is at that ultimate determination that there wasn't a likelihood of future torture. Except they stopped. They didn't ever look at the country conditions report and think about how that affected it. And isn't it normally the practice in administrative law context to permit the agency the first opportunity to do that once you tell them their predicate was wrong? The BIA made two errors here. The first is that it did not have substantial evidence once you take into account the country report which it was required to consider. The second is that it didn't consider the country report. It doesn't insulate its decision-making by failing to consider something it's required to consider. It doesn't insulate it. We're reviewing it. That's not the point. If they haven't done their job, why wouldn't we normally send it back for them to do their job? Correct. But it didn't do its job at that ultimate conclusion stage. There was no substantial evidence for the ultimate conclusion which it reached. It chose to say that there was no like – that it was speculative, there was no likelihood of torture. And because of all the evidence in the record, the credible evidence is to pass torture. The country report's corroboration of that. Estella saying that the cartel had connections throughout the country, that it's not just about this one individual who may or may not be in Mexico, but all the cartel saw that he had witnessed their activities. For all those reasons, you have to find that there was no substantial evidence and you should direct deferral removal, which is still a remand to the agency with an order to say you must direct – that you must have deferral removal because there is no substantial evidence for that conclusion. If I may just take one moment. I'm a little over time, but I wanted to ask, with the grace of the Court, I'd just like to say a few things on the aggravated felony and the particularly serious  And I won't delay any more. You can have one more minute. Sure. Thank you. As to the aggravated felony, I'll point out that whether or not Extrada Espinoza directly overruled Baron Medina, it effectively overruled it because its reasoning and theory is clearly irreconcilable with it. The reason is because Baron Medina expressly rejected any reference to a federal criminal statutory analog, and Extrada Espinoza said why. That is the definition of sexual abuse of a minor. But even if you were to decide that you didn't want to look to 2243, Extrada Espinoza has the reasoning that says it must be a federal criminal statutory analog, and there are others that refer to minors under the age of 12 that I've outlined before and in the brief. Those all require acts involving sexual or intimate body parts. Finally, as to the particularly serious crime, I'd ask you to look to our briefing on exhaustion, and I'd just like to note that this Court and others have said you don't look to the conduct that is beyond this conviction, so we shouldn't be looking to the other conviction that may have occurred on the same day. There wasn't any analysis directly of the conduct of this conviction, which did not involve force and did not involve some sense of sexual conduct beyond the lewd conduct. Thank you, counsel. The case just argued is submitted. The arguments have been very helpful from both counsel, and we appreciate them very much. And we've given you an opportunity to be in some nice weather for a day or two, so thank you for coming. I know. That's why I was noticing that. Thank you.
judges: Dearie, Graber, Nguyen